# In the United States Court of Federal Claims

**ASSOCIATED ENERGY GROUP, LLC,**

*Plaintiff,*

v.

**THE UNITED STATES,** acting through the **U.S. DEFENSE LOGISTICS AGENCY,**

*Defendant,*

and

**KROPP HOLDINGS, INC.,**

*Defendant-Intervenor.*

No. 24-241
(Filed Under Seal: April 2, 2024)
(Reissued: April 5, 2024)

Not for Publication

---

*Todd J. Canni*, Baker & Hostetler LLP, Los Angeles, California, for Plaintiff. *Kevin Barnett, Stephen Ruscus, Kevin N. Dorn,* and *Kaitlyn E. Toth*, Baker & Hostetler LLP, Washington, D.C., of counsel.

*John H. Roberson*, Senior Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. *Steven Sosko*, Senior Counsel, Defense Logistics Agency – Energy, Fort Belvoir, Virginia, of counsel.

*Craig A. Holman*, Arnold & Porter Kaye Scholer LLP, Washington, D.C., for Defendant-Intervenor. *Kara L. Daniels* and *Thomas A. Pettit*, Arnold & Porter Kaye Scholer LLP, Washington, D.C., of counsel.

## OPINION AND ORDER

**HADJI,** *Judge.*

This is a pre-award bid protest arising from Defense Logistics Agency's (Defendant or DLA) handling of its procurement for the Aviation Into-plane Reimbursement Card (Air Card) Program. Plaintiff, Associated Energy Group, LLC (Plaintiff or AEG), alleges DLA failed to adequately mitigate an unauthorized disclosure of competitively useful information to Kropp Holdings, Inc. (KHI, Incumbent, or Intervenor) days before final

proposal revisions were due under a Request for Proposals (RFP). In its prayer for relief, Plaintiff requests that this Court enjoin DLA from continuing the Air Card procurement process until appropriate corrective action is taken. Before the Court are Plaintiff's Motion for Judgment on the Administrative Record (Pl.'s MJAR) (ECF 25), Defendant's Cross-Motion for Judgment on the Administrative Record (Def.'s MJAR) (ECF 26), and Intervenor's Cross-Motion for Judgment on the Administrative Record (Int.'s MJAR) (ECF 27).

For the reasons stated below, the Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF 25), **GRANTS** Defendant's Cross-Motion for Judgment on the Administrative Record (ECF 26), and **GRANTS** Intervenor's Cross-Motion for Judgment on the Administrative Record (ECF 27).[1]

## BACKGROUND

DLA is the contracting activity for petroleum products and services for the Department of Defense (DoD). AR 1108. In furtherance of this mission, DLA runs the Air Card Program, which provides credit cards to the military services to buy commercial aviation fuel and ancillary ground services at commercial airports worldwide. AR 134, 1109.

In 2012, DLA awarded a contract, No. SP0600-12-C-0359, to KHI to provide card transactional services to support DLA's Air and Sea Card programs worldwide, including customer service, a retail merchant network, an Electronic Access System (EAS), and charge cards for the Air Card Program. AR 1108. The contract expired on December 31, 2023. AR 1108. In August 2023, DLA issued a sole-source justification for a bridge contract to KHI commencing January 1 to June 30, 2024, with a potential six-month option commencing July 1 to December 31, 2024. AR 1108-1115.

In June 2021, DLA issued RFP No. SPE608-21-R-0203 for a new Air Card contract, requesting proposals for commercial payment card solutions and transaction processing services to support the DLA Air Card Program. AR 1-132. The RFP contemplated the award of a three-year, firm fixed price contract, with two one-year option periods, and an additional six-month Government option to extend for a total of five and a half years. AR 2-3, 131. The RFP, as amended, explained that award would be made based on one preliminary evaluation factor (whether an offeror's proposal was at no cost to the Government) evaluated on an acceptable/unacceptable basis, and six weighted evaluation factors evaluated on a best-value tradeoff basis: (1) technical approach; (2) management approach; (3) AIR Card EAS; (4) merchant acceptance with level III data plan; (5) past performance; and (6) price. AR 579. With respect to price, the RFP explained that an

---

[1] This Opinion was initially issued under seal on April 2, 2024. ECF 36. The parties were directed to propose redactions by April 5, 2024, and Plaintiff requested that quotations from the *post hoc* declaration of its chief executive officer be redacted. As the Defendant and Intervenor have raised no objections, the Court adopts in full Plaintiff's proposed redactions and reissues this public version of the Opinion.

offeror's price under the contract was represented as a refund percentage to DLA based on sales volume:

> Offerors are expected to propose competitive pricing at the minimum 1% or greater based upon Air Card Program Total Sales History (non-contract fuel, non-contract fuel related charges, and non-contract ground services transactions) to calculate refunds of this request for proposal. The sales refund based on the volume of spend will be the only price evaluated for the purpose of the award. Price will be evaluated based on the Total Net Refund for the base period and all option periods.

AR 584. DLA reserved the right to conduct a price realism analysis, and further reserved the right to award to a proposal other than the lowest evaluated offer. *Id*.

AEG and KHI, the incumbent contractor, each submitted a proposal in response to the RFP, and in June 2022, DLA awarded AEG the Air Card contract after concluding that AEG represented the "best overall value." AR 766, 773. DLA found that AEG offered a superior technical proposal as well as a higher refund rate than its competitors, meaning no tradeoff analysis proved necessary. AR 770. KHI requested a mandatory post-award debriefing pursuant to Federal Acquisition Regulation (FAR) 15.506 and Defense Federal Acquisition Regulation (DFARS) 215.506. AR 812-13. During the debriefing, in compliance with the disclosure requirements of FAR 15.506(d)(2), DLA provided KHI with a redacted copy of the Source Selection Decision Document, which disclosed AEG's adjectival ratings under each evaluation factor, AEG's proposed refund rate (as a percentage), and AEG's estimated projected refund back to DLA over the life of the contract. AR 770.

In July 2022, KHI protested the award to AEG at the Government Accountability Office (GAO), challenging aspects of DLA's evaluation of the offerors' respective proposals, based on concerns stemming from perceived organizational conflicts of interest, AEG's responsibility, and DLA's alleged deviation from stated solicitation criteria. AR 807-11. Later that month, the GAO dismissed the protest as academic following DLA's announcement of its intention to implement corrective action, including a re-evaluation of proposals and new award decision. AR 879.

During DLA's re-evaluation of AEG's and KHI's proposals, DLA identified new defects and weaknesses in both proposals. AR 774, 776. As part of its corrective action, DLA determined the need for additional discussions. *Id*. In December 2022, DLA issued discussions letters to the offerors, affording them the opportunity to address the newly assessed deficiencies or weaknesses via revisions to their proposals. *Id*. DLA also issued Amendment 12 to the RFP, which adjusted the page limitations for offerors' proposals with respect to the technical approach, management approach, and past performance factors (Volume 2 proposals). AR 443-44.

In January 2023, KHI filed its second protest with the GAO, this time challenging the scope of DLA's corrective action. AR 880-907. Amongst other things, KHI took issue with the restrictions on offerors' proposal revisions as well as the agency's changed approach to revisions. AR 880-83. Following DLA's announcement of its intention to implement additional corrective action, the GAO once again dismissed KHI's protest as academic. AR 908-09.

As part of its corrective action, DLA issued another round of discussions letters and allowed for updated (though limited) proposal revisions. AR 779, 782. Once again, DLA limited proposal revisions only to factors or sub-factors where DLA identified deficiencies or weaknesses. *Id*. In addition, DLA issued Amendment 13 to the RFP, which again adjusted the page limits for offerors' Volume 2 proposals. AR 445-46.

In February 2023, KHI again challenged the scope of DLA's corrective action. AR 915-41. KHI alleged, among other things, that DLA unequally and unreasonably restricted the scope of proposal revisions. AR 932. DLA defended the protest and filed an Agency Report, to which KHI responded in April 2023. AR 942. KHI's response added a supplemental protest ground alleging that, because AEG had exceeded the page limit in response to Factor 2 and DLA had provided discussions and feedback on that excess content, DLA had deprived KHI of the right to compete under common instructions. AR 954. In May 2023, the GAO held an outcome predictive alternative dispute resolution conference. AR 1096-97. During this conference, the GAO attorney assigned to the protest advised that the protest would likely be sustained after finding that DLA: (1) instituted differing treatment that put the offerors on unequal footing; and (2) placed unreasonable limitations on KHI's proposal revisions. *Id*. The GAO attorney stated that he would recommend, at a minimum, that DLA allow all offerors to revise their Volume 2 Proposals without limitation. AR 1097. The GAO attorney further specified that DLA should allow KHI to identify and revise any inconsistencies in its proposal as a result of the proposal changes, but noted that DLA may consider taking broader corrective action. *Id*.

In May 2023, the GAO again dismissed KHI's protest as academic after DLA proposed another round of corrective action. AR 985 ("The agency provides it will either: '[a]llow offerors to make unrestricted revisions to their Volume 2 proposals, allow discussions on the revisions to Volume 2, and allow offerors to identify and revise inconsistencies and derivative issues in their proposals resulting from those revisions and the revisions made in response to the February 2023 limited discussions letters;' or will '[t]ake broader corrective action as the contracting officer deems appropriate.'"). In August 2023, DLA ultimately decided to allow offerors to make unrestricted revisions to their proposals (including revisions to Volume 4, the pricing volume) and allow discussions on the revisions to their proposals. *See* AR 989. In the memorandum explaining DLA's decision, the contracting officer stated that they "considered limiting revisions to Volume 2 and allowing offerors to identify and revise other areas in which inconsistencies were created" but concluded that "unrestricted revisions to Volume 2 could reasonably affect all areas of offerors' proposals." *Id*. Accordingly, the contracting officer decided to allow

unrestricted revisions "to ensure the offerors have equal opportunities to revise their proposals without creating inconsistencies or derivative issues elsewhere in their proposals." *Id*. In accordance with the contracting officer's corrective action determination, DLA issued Amendment 14 to the RFP and sent AEG and KHI updated discussions letters. *See* AR 447, 785-86, 787-89.

In September 2023, prior to the deadline for final proposal revisions, AEG asked DLA to provide updated Air Card historical sales data, as presented on Amendment 2 of the RFP, for fiscal years 2021 and 2022.[2] AR 790. AEG maintained that KHI, as the incumbent contractor, had an unfair competitive advantage given its access to more current purchasing data. *Id*. In response, on September 28, 2023, DLA issued Amendment 15 to the RFP, which provided the requested updated historical sales data. AR 655-56. On the same day, the contracting officer executed a Memorandum for the Record documenting the rationale for DLA's decision to issue Amendment 15 (the Amendment 15 Memorandum). AR 1120-21. In relevant part, the Amendment 15 Memorandum provided as follows:

> On September 21, 2023, AEG requested the AIR Card® History Sales Data as presented on solicitation Amendment 0002, issued on August 4, 2021, to be updated to present updated data for FY21 & FY22. The Contracting Officer determined AEG's request is reasonable and that providing this information will ensure that both remaining offerors have the relevant information to revise their proposals. More than two years have passed since the sales data from FY13 to FY20 were provided in Amendment 0002 and the sales data sometimes changes significantly from year to year. Additionally, both AEG's and KHI's price proposals included rates and projections based on estimated sales volume on the contract. It's reasonable to conclude that the merchant fees and refund rates are based, at least in part, on the projected volume of sales in the contract and therefore changes in the recent sales volume may reasonably impact the proposed rates and fees. Since the offerors are authorized to submit full revisions, the offerors may decide to revise their price proposals as part of the revisions. Accordingly, since the sales data was previously provided, but is now stale due to two years passing since Amendment 0002 was issued, the Contracting Officer has determined that this information is relevant to the revisions and therefore should be provided to both offerors.

*Id*.

---

[2] Amendment 2 provided Air Card historic sales information through fiscal year 2020 only. *See* AR 412.

The contracting officer attempted to send Amendment 15 to both AEG and KHI but forgot to include the attachments in her email to KHI. AR 1122 (AEG email), 1123 (KHI email). When she attempted to re-send Amendment 15 to KHI, she instead mistakenly forwarded the Amendment 15 Memorandum, a source selection sensitive document. AR 1123, 1135. Once she realized her mistake, the contracting officer notified DLA counsel as well as the military officer overseeing the Fuel Cards Program. AR 1135. The contracting officer then called KHI's President and Director of Government Contract Management, the officers at KHI who received the Amendment 15 Memorandum, and requested that they delete the email she had sent in error. *Id*. In follow-up emails, both KHI's President and Director of Government Contract Management confirmed they had deleted the emails but had reviewed the documents prior to their call with DLA. AR 1146, 1148. Both KHI officers also confirmed that they had shared the Amendment 15 Memorandum with legal counsel but that legal counsel had also deleted the documents and email. AR 1145, 1148. The contracting officer did not share the Amendment 15 Memorandum with AEG.

In accordance with the requirements of FAR 3.104-7,[3] which requires agencies to take action upon learning of potential Procurement Integrity Act (PIA) violations, DLA investigated this unauthorized disclosure incident, and documented the results in a memorandum on October 18, 2023 (the Investigation Memorandum). AR 1134-38. The agency found that the contracting officer did disclose source selection information and that the Amendment 15 Memorandum discloses "the internal DLA Energy decision making methodology in releasing Amendment 0015, the fact that there are now only two offerors being allowed to provide final proposal revisions, the fact that AEG requested the historical price information, and that the historical sales information provided in Amendment 0002 had been used by both offerors in developing pricing." AR 1136. The agency determined that these disclosures were not made knowingly or intentionally. *Id*.

In reviewing the impact of the inadvertent disclosure of the Amendment 15 Memorandum, the agency determined that "[t]o the extent that the disclosure contained some proposal information, the information was very general, could likely be inferred through common sense and understanding of normal business practices, and therefore does not provide KHI with an advantage in the ongoing source selection." *Id*. Specifically, DLA explained the disclosure that both offerors used previous sales data provided in Amendment 002 to the RFP in developing their pricing was not prejudicial because the information "gives no indication as to what changes, if any, either offeror could make with the new data." AR 1137. Moreover, the agency noted that "[w]hile the fact that AEG used the provided data in their previous proposal was revealed, how AEG used the data was not revealed to KHI, and because both offerors used the same data similarly in their previous proposals it can be concluded that any reasonable person would use this pricing

---

[3] FAR 3.104-7(a) states, "A contracting officer who receives or obtains information of a violation or possible violation of 41 U.S.C. 2102, 2103, or 2104 . . . must determine if the reported violation or possible violation has any impact on the pending award or selection of the contractor."

methodology in developing their [updated] pricing volume." *Id*. Because DLA found that the disclosure resulted in neither competitive harm nor an unfair advantage, it ultimately concluded that "there [wa]s no impact on the procurement from the inadvertent unauthorized disclosure." *Id*.

In ignorance of DLA's disclosure, on October 10, 2023, AEG filed a pre-award protest at the GAO contesting the scope of revisions authorized under DLA's August 2023 corrective action. AR 992-1018. Specifically, AEG alleged that DLA's decision to allow unrestricted revisions to offerors' proposals constituted an abuse of discretion. AR 999-1010. On November 20, 2023, AEG filed a supplemental protest alleging: (1) that DLA's disclosure of the Amendment 15 Memorandum to KHI violated the PIA, thus harming AEG's competitive position; and (2) that DLA and KHI failed to sufficiently mitigate the improper disclosure. AR 1019-31. Claiming serious mishandling by both KHI and DLA, AEG sought KHI's disqualification from the competition. AR 1029-31.

Eight days later, on November 28, 2023, AEG requested fiscal year 2023 updated sales data. AR 791. In December 2023, DLA provided the requested information to the offerors via Amendment 16. AR 726-27.

On January 11, 2024, the GAO denied AEG's protest.[4] AR 1107. In reaching its decision, the GAO rejected AEG's PIA allegation given the absence of evidence that DLA's disclosure of the Amendment 15 Memorandum was knowing or intentional. AR 1101. The GAO likewise rejected AEG's arguments concerning an unfair competitive advantage, ultimately concluding that the disclosed material was not competitively useful. AR 1103-05. Finally, the GAO found no basis to object to DLA's decision to allow full proposal revisions. AR 1106-07.

On February 15, 2024, DLA issued discussions letters to AEG and KHI notifying them of a final round of discussions and requesting their Final Proposal Revisions. AR 792, 798. The letters authorize the parties to make full revisions, including to price. *See id*. Later that day, Plaintiff filed suit and moved for a preliminary injunction. Compl. (ECF 1); Pl.'s Mot. for Prelim. Injunction (ECF 2).

## LEGAL STANDARDS

### I.     Bid Protest Jurisdiction and the Standard of Review

Plaintiff alleges jurisdiction under the Tucker Act. Compl. ¶ 26. The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, 28 U.S.C. § 1491(b), confers jurisdiction on this Court to render judgment on "an action by an interested party objecting to … the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. 28 U.S.C. § 1491(b)(1).

---

[4] As recognized by the GAO, AEG raised collateral allegations in addition to the ones enumerated above, none of which the GAO found worthy of discussion. AR 1098 n.6.

The Court reviews a bid protest action under the standards set forth in Section 706 of the Administrative Procedure Act (APA), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); *see NVT Techs., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed. Cir. 2004) (stating that APA standard of review is applicable in bid protest context). The APA provides that an agency's decision is to be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019) (citing 5 U.S.C. § 706(2)). "The arbitrary and capricious standard applicable here is highly deferential," and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc*. 419 U.S. 281, 285 (1974)). In reviewing procurement decisions, the Court should not substitute its judgment for that of the agency. *See R & W Flammann GmbH v. United States,* 339 F.3d 1320, 1322 (Fed. Cir. 2003).

## II.     Judgment on the Administrative Record in a Bid Protest

Court of Federal Claim Rule 52.1(c) provides for judgment on the administrative record. Rule 52.1(c) was "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Bannum v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

To prevail on a bid protest, a plaintiff must demonstrate: "(1) that the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citation omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.* at 1333 (internal quotation marks omitted). In contrast, when a disappointed bidder raises a challenge on the first ground, "the test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision has no rational basis." *Id.* at 1332-33 (internal quotation marks and citations omitted).

## DISCUSSION

In the sole count before this Court, Plaintiff maintains that DLA made an unauthorized disclosure of competitively useful information and failed to properly mitigate the effects of the unauthorized disclosure, resulting in competitive prejudice to AEG.[5] Compl. at §§ 66-78.

---

[5] Recognizing that the disclosure was made in error, Plaintiff does not allege a PIA violation. Pl.'s MJAR at 1.

### I. Plaintiff's *Post Hoc* Declaration Is Not Part of the Administrative Record

As a preliminary matter before reaching the merits of Plaintiff's argument, the Court must determine whether Plaintiff's fifteen-page *post hoc* declaration of its chief executive officer is properly before the Court. Defendant asks the Court to strike the entirety of the declaration of Christopher Clementi, dated February 14, 2024 (the Clementi Declaration), Pl.'s Ex. A, ECF 25-1, except for the introduction and a handful of paragraphs concerning alleged harms.[6] Def.'s MJAR at 20-26. Defendant also requests that the Court strike all portions of Plaintiff's MJAR that reference, discuss, or rely on improper portions of the Clementi Declaration. *Id*. at 26. Intervenor likewise urges the Court to disregard the Clementi Declaration. Int.'s MJAR at 15-16. Both Defendant and Intervenor characterize the Clementi Declaration as extra-record opinion testimony and argue that supplementation of the administrative record is not warranted in this case. Def.'s MJAR at 20-26; Int.'s MJAR at 15-16.

Plaintiff responds that consideration of the Clementi Declaration is necessary to "address a glaring hole in the record."[7] Pl.'s Rep. at 5. In Plaintiff's view, the omission of the Clementi Declaration precludes effective judicial review because the Court cannot "undertake a proper and meaningful evaluation [of] DLA's decision on competitive usefulness and mitigation measures taken without considering the harmed offeror's perspective, which is unrepresented in the record …." *Id*. at 6. Specifically, Plaintiff maintains that the insights shared in the Clementi Declaration "will allow this Court to consider, as DLA should have, that by viewing AEG's prior proposed refund rate along with the historic data then available ending in 2020, including the estimated projected refund to DLA, and then factoring in the updated 2022 sales data, the offeror would have insight to forecast how AEG would approach the pricing in FPR." *Id*. at 7-8 (internal quotation marks omitted).

In cases brought pursuant to the Court's bid protest jurisdiction, 28 U.S.C. § 1491(b)(1), the Court is required to apply the APA standard of review. *Id*. § 1491(b)(4). Accordingly, the "task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based *on the record the agency presents to the reviewing court*." *Axiom Res. Mgmt. Inc. v. United States*, 564 F.3d 1374, 1379 (Fed.

---

[6] Defendant has no issue with the introductory paragraph, paragraphs 1, 32-36, and the attestation at the Declaration's end. Def.'s MJAR at 26. The parties agree that submission of harm declarations are permissible. *See* Def.'s MJAR at 23; Pl.'s Rep. at 9. It is well established that "[t]his Court may consider information that is not contained in the administrative record as part of the Court record in a bid protest matter if the information pertains to the factors to be weighed by the Court in deciding whether to grant injunctive relief," such as prejudice. *PTC, Inc. v. United States*, 143 Fed. Cl. 770, 783-84 (2019).

[7] AEG acknowledges that it did not previously file a motion to supplement the administrative record, Pl.'s Rep. at 5 n.2, but argues that the Court should nonetheless consider the Clementi Declaration to permit a proper evaluation of DLA's decision. *Id*. at 5. AEG attributes this failure to the agreement among the parties limiting AEG's MJAR to recaptioning and the characterization of its brief from a motion for preliminary injunction to an MJAR to expedite the briefing schedule. AEG contends that, had Defendant raised record concerns, it would have filed a motion to supplement. *Id*. at 5 n.2.

Cir. 2009) (emphasis in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)). In other words, the Court must focus its review on the "administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The purpose of limiting judicial review to the record before the agency is to guard against the courts using new evidence to convert the arbitrary and capricious standard into effectively de novo review." *AgustaWestland N. Am. Inv. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (internal quotation marks and citations omitted). As a result, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Axiom*, 564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)). "The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient." *Harkcon, Inc. v. United States*, 132 Fed. Cl. 697, 701 (2017).

Plaintiff has not met its burden in this case. First, the Court rejects Plaintiff's contention that the inclusion of AEG's "perspective" is necessary to "complete" the record given that DLA already took KHI's "opinions" into account. Pl.'s Rep. at 8-9. In arguing that DLA "obtained KHI's input" and thus should consider Plaintiff's perspective as well, Plaintiff points solely to DLA's acknowledgement of the statements from KHI officers that the inadvertently disclosed information "was already known to them or discernable from Amendment 0015." *Id.* at 8 (citing AR 1136). In seeking to introduce the Clementi Declaration, Plaintiff ignores the reality that, unlike the extensive opinions proffered by Plaintiff in the challenged declaration, KHI's alleged "input" was limited to a single line regarding whether the disclosed information "was all known … prior to reading, or readily discernible from the substance of Amendment 0015." AR 1127; 1132. Not only is KHI's statement grounded in fact, not opinion, but its inclusion did not create a "glaring hole" in the administrative record, as alleged by Plaintiff. And even if it did, the Court finds that its limited scope would in no way justify the inclusion of fifteen pages of opinion and argument in the administrative record to offset its effect.

Further, as Defendant points out, and Plaintiff seemingly concedes,[8] much of the Clementi Declaration consists of opinion testimony. Def.'s MJAR at 23. Specifically, Plaintiff seeks to introduce into the record multiple opinions concerning how DLA's inadvertent disclosure afforded the incumbent an unfair competitive advantage. *See, e.g.*, Pl.'s Ex. A ¶ 22, ECF 25-1 ▮▮▮▮▮▮▮▮▮▮). Plaintiff also uses the Clementi Declaration as a vehicle to reargue its legal position regarding both the competitive usefulness of the disclosed information and the inadequacy of DLA's mitigation efforts. *See, e.g.*, *id.* ¶ 17 (▮▮▮▮▮▮▮▮

---

[8] Plaintiff describes the proffered information as "AEG's input," "the victimized offeror's views," and "AEG's perspective." Pl.'s Rep. at 8-9.

10

██████); *id.* ¶ 28 (████████
████████████████████████████████████████████).

Because the challenged portion of the Clementi Declaration serves no purpose other than to provide speculation as to how a competitor might use the inadvertently disclosed information and advance Plaintiff's legal position, it is of no value to the Court in making its determination of whether the agency's decision-making was arbitrary and capricious. The Court thus finds that consideration of such extra-record opinion is not necessary for the Court to perform effective judicial review. *See LS3, Inc. v. United States*, 163 Fed. Cl. 1, 8 (2022) (declining to allow supplementation of the administrative record with a declaration that did not help the Court objectively understand the technical aspects of the procurement but instead attempted to challenge the merits of an agency's evaluation and voice disagreement with the agency's interpretation of the plaintiff's proposal); *ViON Corp. v. United States*, 122 Fed. Cl. 559, 569-70 (2015) (denying introduction of declaration when it "does not correct any mistakes or fill any gaps" in the AR but instead, "reiterates [plaintiff's] legal position in this case").

For the foregoing reasons, allowing Plaintiff to supplement the administrative record with the Clementi Declaration would run afoul of the Federal Circuit's clear directive in *Axiom*—that this Court should not supplement the administrative record unless the existing record is insufficient to permit meaningful review consistent with the APA. 564 F.3d at 1381. Accordingly, in ruling on the parties' cross-motions for judgment on the administrative record, the Court will not consider as evidence the Clementi Declaration, with the exception of the introductory paragraph, paragraphs 1 and 32-36, and the attestation at the Declaration's end.

## II. DLA's Actions Following its Improper Disclosure Were Reasonable

The Court next turns to the merits of Plaintiff's argument.[9] The crux of Plaintiff's argument is that, contrary to the conclusions reached by DLA, DLA's inadvertent disclosure of the Amendment 15 Memorandum, when construed together with the prior disclosure of AEG's winning refund rate pricing from the debriefing,[10] afforded AEG's sole competitor an unfair competitive advantage that prejudiced AEG, and DLA failed to sufficiently mitigate that harm. Pl.'s MJAR at 1, 4. According to Defendant and Intervenor, DLA properly investigated the inadvertent disclosure, analyzed each piece of information disclosed, and reasonably concluded it did not create an unfair advantage requiring additional mitigation. Def.'s MJAR at 2; Int.'s MJAR at 1-2. Upon review of the entire record, the Court agrees.

---

[9] The Court has considered all arguments Plaintiff raised. To the extent not discussed herein, Plaintiff's other arguments are unpersuasive, meritless, or unnecessary for resolving the issues before the Court.

[10] The parties do not dispute the propriety of the disclosures made during the debriefing. *See* Def.'s MJAR at 27; Int.'s MJAR at 21. Although Plaintiff repeatedly refers to DLA's disclosure of its refund rate pricing, *see* Pl.'s MJAR at 7, 23, 26, AEG concedes that the disclosure was proper. Pl.'s Rep. at 18 n.5.

A. <u>DLA Reasonably Determined that the Disclosed Information Was Not Competitively Useful</u>

The parties do not dispute that DLA made an unauthorized disclosure. At issue here is the import and significance of the inadvertently disclosed information. In Plaintiff's view, DLA's disclosure of AEG's winning refund rate pricing during the post-award debriefing, in conjunction with DLA's unauthorized disclosure of source selection information and AEG's bid and proposal information, afforded AEG's only competitor valuable insight into AEG's pricing strategy and methodology, resulting in an unfair competitive advantage. Pl.'s MJAR at 4, 19-20. In contrast, both Defendant and Intervenor contend that the information disclosed was of no competitive consequence. Def.'s MJAR at 34-41; Int.'s MJAR at 18-22.

Specifically, Plaintiff identifies four pieces of information from the Amendment 15 Memorandum as competitively useful source selection information or contractor bid or proposal information: (1) that AEG used "historical sales volume data (ending with 2020 sales data) in developing its refund rate strategy for Volume 4, Price"; (2) that AEG requested updated Air Card sales data for 2021 and 2022; (3) that DLA believed that AEG's request was reasonable and believed the prior data was "stale"; and (4) that AEG and KHI were the only remaining offerors. Pl.'s MJAR at 18; Pl.'s Rep. at 10.

The Court addresses each disclosure in turn. First, with respect to the disclosure that AEG had used historical sales data in developing its pricing position, the Court finds that this information bestowed no competitive advantage as use of this data was both expected and instructed. The RFP explicitly directed offerors to use historical sales data to calculate proposed refunds. AR 131. ("Offerors are expected to propose competitive pricing at the minimum 1% or greater based upon Air Card Program Total Sales History … to calculate refunds of this request for proposal."). As such, the fact that AEG used historical sales data to set its refund rate would have been reasonably anticipated by KHI (or any other offeror, for that matter) from the outset of the procurement. Further, as DLA found, this general information did "not provide KHI with the specifics of how AEG would use the provided data in their proposal," did not indicate "what changes, if any, either offeror could make with the new data," and was necessary for offerors to determine their compensation. AR 1137. In light of the foregoing, DLA reasonably found that "AEG was not competitively harmed by not receiving this information." *Id*.

Second, with respect to the disclosure that AEG requested the updated Air Card sales data that resulted in a subsequent amendment issued to both offerors, the Court does not see how such information could confer an unfair advantage. Because KHI did not request the additional historical information, it could have reasonably inferred that another offeror made this request. And since the RFP directs offerors to use Air Card sales history to calculate their refunds, it is logical that the most recent sales data would be useful to all interested parties and thus subject to request. Although AEG argues that the disclosure of AEG's request would have alerted KHI to the possibility that AEG was considering revising its price, Pl.'s MJAR at 19, such a possibility would have been obvious from the

12

moment DLA released Amendment 14 and announced its decision to allow full revisions, to include price. Had the Amendment 15 Memorandum given an indication of what revisions, if any, AEG would make to its proposal, a different finding might follow. However, the Amendment 15 Memorandum conveyed no such information. *See* AR 1137. Under these circumstances, DLA reasonably concluded that the fact that AEG requested updated data did not provide KHI with an unfair advantage.

Third, with respect to the disclosure regarding DLA's internal decision-making methodology for releasing Amendment 15, the Court finds the offerors could have reasonably inferred the rationale underpinning the contracting officer's decision to grant AEG's request for additional Air Card sales data. Again, because KHI did not request the additional historical information, they could have reasonably inferred that another offeror had made this request. Additionally, Amendment 2, which initially presented the Air Card historical sales data, was issued on August 4, 2021. AR 1120. More than two years had passed since that date, rendering the sales data in Amendment 2 antiquated. *Id*. Once DLA made the decision to allow offerors to revise their price proposals as part of their revisions, DLA naturally determined that the updated information was relevant to the revisions and should be provided to both offerors. AR 1121. This logical thought process was likely readily apparent to KHI, and thus DLA's conclusion that the disclosure provided no competitive advantage has a rational basis.

Fourth, with respect to the disclosure confirming that AEG and KHI were the only remaining offerors, the Court rejects any contention that this information held competitive value. As recognized by DLA, AEG was the original awardee in this procurement and was an active participant in prior protests. AR 1137. As such, AEG's continued involvement was already known to KHI. The Amendment 15 Memorandum did disclose that a third party was no longer an offeror (given the document's reference to "both" offerors), but that party's withdrawal was also discernable through its absence from the earlier protests brought by AEG and KHI. *Id*. Further, AEG's complaint regarding the disclosure of the identity of the remaining offerors rings particularly hollow given that, even without the benefit of the disclosure, AEG was able to independently discern that only two offerors remained. On October 29, 2023, prior to learning of the inadvertent disclosure,[11] AEG demonstrated that it knew there were only two remaining offerors when it identified itself as "the only other offeror and competitor to KHI" in a letter to DLA. AR 1118. Given that one of the parties clearly discerned this fact on its own, the Court must find that DLA reasonably determined that the disclosure of this information did not give KHI a competitive advantage. AR 1137.

Turning to Plaintiff's complaint that DLA failed to review the disclosure "holistically" based on the totality of the information available to KHI, the Court finds this argument unavailing. Contrary to Plaintiff's contention, the fact that DLA released Plaintiff's price as required during the debriefing process does not transform the

---

[11] AEG learned that DLA had inadvertently disclosed the Amendment 15 Memorandum on November 9, 2023. *See* AR 1020 n.1.

13

information described above into competitively useful information, and Plaintiff has not demonstrated how the combined information would create an unfair advantage. Instead, Plaintiff attempts to rely on extra-record speculation of how a competitor might use the inadvertently disclosed information in conjunction with the previously disclosed refund rate pricing to "reverse engineer" Plaintiff's pricing strategy for the final proposal revisions. But the Amendment 15 Memorandum contained no direct proposal content. It contained no estimations or calculations by Plaintiff, no internal cost data, and no actual price information. It did not indicate what revisions AEG would make to its proposal or state how AEG used the historic data. And vitally, as discussed, all the information contained therein was generic and readily discernable. Under such circumstances, the Court fails to see how the disclosure yielded any valuable insights, even when combined with KHI's pre-existing knowledge of AEG's refund rate from the debriefing. Thus, the Court rejects Plaintiff's argument that DLA acted arbitrarily and capriciously by not considering the cumulative impact of the inadvertently disclosed information alongside AEG's refund rate and estimated projected refund.

In sum, the record supports DLA's determination that the inadvertent release of the Amendment 15 Memorandum conferred no unfair advantage and caused no competitive harm. Contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process, *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010), and when a contracting officer's finding of no impact is rational, the Court will uphold it on judicial review. *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1296 (Fed. Cir. 2020). Given the nature of the divulged information, it is simply not credible to suggest that the disclosure had any impact on the procurement, much less created an unfair advantage or competitive prejudice. Accordingly, Plaintiff has not met its "heavy burden" of showing that DLA's conclusion regarding the impact (or lack thereof) of the Amendment 15 Memorandum lacked a rational basis. *Impresa*, 238 F.3d at 1332-33.

In reaching this decision, the Court recognizes that the parties made similar arguments before the GAO, which found that, both singularly and collectively, the disclosed facts did not impart a competitive advantage. AR 1102-05. Although it is well settled that the Court of Federal Claims is "not bound by the views of the Comptroller General," *Burroughs Corp. v. United States,* 223 Ct. Cl. 53, 617 F.2d 590, 597 (1980), the decisions of the Comptroller General are nonetheless instructive in the area of bid protests. *See CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1355-56 (Fed. Cir. 2008) (acknowledging that the GAO's decision informed the Court's decision); *Planning Rsch. Corp. v. United States*, 971 F.2d 736, 740 (Fed. Cir. 1992) (noting that GAO decisions may be considered because of the Comptroller General's experience in dealing with bid protests); *DGS Cont. Serv., Inc. v. United States*, 43 Fed. Cl. 227, 238 (1999) ("While the decisions of the Comptroller General are not binding, the court recognizes that the [GAO] has special expertise in this area, and its decisions may provide useful guidance to the court."). In this case, the Court finds the reasoning behind the Comptroller General's decision persuasive and concurs that DLA reasonably determined that the disclosed information was not competitively useful.

### B. DLA Reasonably Concluded that Further Mitigation Was Unnecessary

Believing that the Amendment 15 Memorandum was competitively useful, Plaintiff argues that the remedial measures deployed by DLA were insufficient to remedy the harm caused by disclosure. Pl.'s MJAR at 31. Specifically, Plaintiff argues that DLA's choice to limit remedial measures to simply requiring KHI to delete the Amendment 15 Memorandum was insufficient because deletion alone "did not prevent [KHI] from recalling, using, and benefiting from the unauthorized disclosure." *Id*. at 34. In making this argument, Plaintiff acknowledges that agencies have discretion in determining corrective actions, but argues that DLA "must do something more than what it has done." *Id*. at 13. In contrast, Defendant and Intervenor argue that, given the non-prejudicial nature of the inadvertent disclosure, requiring the deletion of the Amendment 15 Memorandum constituted reasonable mitigation and no further measures were necessary. *See* Def.'s MJAR at 41; Int.'s MJAR at 22-23.

The Court agrees. Plaintiff's demand for more mitigation is predicated on the faulty premise that DLA's inadvertent disclosure provided an unfair competitive advantage. Having found that the disclosure imparted no such advantage, there was simply no need for further mitigation. Thus, DLA's decision to refrain from requiring additional mitigation had a rational basis, and the agency did not act arbitrarily or capriciously by proceeding with the procurement. *Impresa*, 238 F.3d at 1332-33.

### III. Plaintiff is Not Entitled to Injunctive Relief Having Failed on the Merits

AEG seeks an injunction preventing DLA from proceeding with the procurement "until DLA takes appropriate corrective actions to mitigate the unfair competitive advantage bestowed upon AEG's only competitor." Pl.'s MJAR at 3. Because AEG has not shown success on the merits, its claim for permanent injunctive relief fails. *See*, *e.g.*, *PGBA, LLC v. United States*, 389 F.3d at 1229 (stating test for permanent injunction, including requirement that plaintiff has succeeded on the merits of a case); *see also Warrior Serv. Co., LLC v. United States*, 149 Fed. Cl. 594, 614 (2020) (denying permanent injunctive relief where protester failed on merits of protest).

### CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to any relief. Defendant's Motion for Judgment on the Administrative Record (ECF 26) and Intervenor's Motion for Judgment on the Administrative Record (ECF 27) are **GRANTED**. Plaintiff's Motion for Judgment on the Administrative Record (ECF 25) is **DENIED**. Accordingly, Plaintiff's Motion for Preliminary Injunction (ECF 2) is **DENIED** as moot. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Government.

**IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge